UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RABAH MORAN, 08-B-0286,

Petitioner,

-v-

THOMAS LAVALLEY,
Superintendent, Clinton Correctional,

Respondent.

13-CV-151-WMS-MJR
REPORT AND RECOMMENDATION

---

This matter has been referred to the undersigned, pursuant to 28 U.S.C. §636(b)(1). (Dkt. No. 20). On February 11, 2013, *pro se* petitioner Rabah Moran ("petitioner") filed the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, challenging the constitutionality of his 2008 conviction in Monroe County Court, after a non-jury trial, of Rape in the First Degree (New York Penal Law ("Penal Law") §130.35(1)) and False Personation (Penal Law §190.23). (Dkt. No. 1).[1] For the reasons that follow, it is recommended that the petition be dismissed and that no certificate of appealability issue.

**PROCEDURAL HISTORY**

In the state court, petitioner was accused of raping the victim, L.H.,[2] during the early morning hours of May 19, 2007, and then giving a false identification to police when he was arrested. Petitioner was charged with first-degree rape and false personation. Petitioner waived his right to a jury trial and proceeded to a non-jury trial, where he was convicted of both charges. On January 15, 2008, the state court

---

1 Along with his petition, petitioner filed a supporting memorandum of law. (Dkt. No. 2). The Court has drawn on petitioner's memorandum in reviewing the claims within his petition.

2 In order to protect the victim's identity, the Court will refer to the victim by her initials.

sentenced petitioner to ten years imprisonment and five years of post-release supervision for the rape conviction, and a concurrent ninety-day jail term for false personation.

On direct appeal to the New York State Supreme Court, Appellate Division, Fourth Judicial Department, petitioner claimed that his jury-trial waiver was invalid because it was not executed in "open court" as required under New York State law. He also claimed that he was denied the effective assistance of trial counsel. On September 30, 2011, the Appellate Division affirmed petitioner's judgment of conviction, finding that his jury-waiver claim was not preserved for appellate review and, in any event, lacked merit. Specifically, the court found that petitioner repeatedly waived his right to a jury trial in open court and executed a written waiver which expressly states that it was made in open court. The court also rejected petitioner's ineffective assistance of counsel claim as meritless. *People v. Moran*, 87 A.D.3d 1312 (4th Dep't 2011).

In a letter to the New York State Court of Appeals, dated October 17, 2011, petitioner sought leave to appeal and relied on the brief he filed with the Appellate Division. On July 10, 2012, the Court of Appeals denied petitioner leave to appeal. *People v. Moran*, 19 N.Y.3d 976 (2012).

On February 7, 2013, petitioner filed a motion for a writ of error *coram nobis* before the Appellate Division, claiming ineffective assistance of appellate counsel. The Appellate Division denied the motion on March 20, 2015. *People v. Moran*, 126 A.D.3d 1426 (4th Dept. 2015). Petitioner applied to the New York State Court of Appeals for leave to appeal, but the Court of Appeals denied leave on September 11, 2015. *People v. Moran*, 26 N.Y.3d 970 (2015).

Petitioner filed the instant federal habeas petition on February 11, 2013, claiming that his jury-trial waiver was invalid under state law and that he was denied the effective assistance of both trial and appellate counsel. (Dkt. Nos. 1, 2). Petitioner claims that his trial attorney failed to seek suppression of evidence, failed to make appropriate objections, failed to properly cross-examine the prosecution's expert witness, and failed to give a cogent and relevant summation. He faults his appellate counsel for not raising weight-of-the-evidence and legal-sufficiency claims on appeal, and for raising the jury-waiver claim on appeal rather than in a post-trial motion under New York Criminal Procedure Law ("C.P.L.") §440.10.

## DISCUSSION

### I. *Exhaustion*

A federal court may not consider a habeas petition unless the petitioner has exhausted his state judicial remedies. 28 U.S.C. §2254(b)(1)(A). A claim is exhausted when the petitioner has "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982).

Here, petitioner has exhausted his claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. He exhausted his ineffective assistance of trial counsel claim by raising it in federal constitutional terms in his brief on direct

appeal to the 4th Department and by adopting that argument in his leave application to the New York State Court of Appeals. He exhausted his ineffective assistance of appellate counsel by raising it in federal constitutional terms in his motion for a writ of error *coram nobis* before the Appellate Division, and by including the argument in his subsequent *leave* application to the Court of Appeals.

As discussed in more detail *infra*, with regard to petitioner's claim of an invalid waiver of his right to a jury trial, petitioner does not claim a violation of his federal constitutional rights and such claim is therefore not cognizable on federal habeas review.

II. *Standard of Review*

As to any claim adjudicated on the merits in state court, petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1), (2). AEDPA sets a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no further." *Harrington*, 562 U.S. at 102. Indeed, the statute "reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

With respect to the "contrary to" clause, the writ may issue: (1) if the state court decision is contrary to Supreme Court precedent on a question of law; or (2) if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different than that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 413. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous;" rather, "[t]he state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Finally, under the statute, any factual determination made by the state court is presumed correct, and it is up to the petitioner to rebut that presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). A state court decision that is based on a factual determination may not be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. §2254(d)(2)).

III. *Invalid Jury-Trial Waiver Claim*

Petitioner challenges the validity of his jury-trial waiver on the ground that it was not executed in "open court" as required by C.P.L. §320.10, which provides that "[s]uch

waiver must be in writing and must be signed by the defendant in person in open court in the presence of the court, and with the approval of the court." The Appellate Division rejected petitioner's argument on the ground that it was not preserved for appellate review. *Moran*, 87 A.D.3d at 1312. The appellate court further held that, in any event, there was no merit to petitioner's claim because petitioner repeatedly waived his right to a jury trial in open court, executed a written waiver of that right before trial, the waiver form expressly states that waiver was made in open court, and petitioner's waiver "was knowing, voluntary and intelligent." *Id.*

Petitioner's jury-waiver claim must be dismissed as it is not cognizable claim on federal habeas corpus review. A federal court may review claims for habeas relief only on the ground that petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). Petitioner's jury-waiver claim rests entirely on New York State law. He argues only that the written execution of the waiver form was not in accordance with C.P.L. §320.10 and the New York Constitution, because he did not sign the waiver form in open court and in the presence of the trial judge. As petitioner does not allege that his federal constitutional rights have been violated, his claim does not present a ground for federal habeas corpus relief and must be dismissed. *Johnson v. Fisher*, 04-CV-5120(CBA), 2006 WL 1912737, at *2 (E.D.N.Y. July 11, 2006) (finding petitioner's challenge to the validity of his jury waiver on the

ground that it was not signed in court in the presence of a judge not to be cognizable on habeas review).

Even if petitioner were to have asserted that the jury-trial waiver somehow violated his federal constitutional rights, such a claim would be without merit based on the facts and circumstances present here. The record shows that petitioner's waiver of his Sixth Amendment right to a trial by a jury was knowingly, intelligently, and voluntarily given.

Prior to trial, on December 4, 2007, petitioner indicated his desire to waive his right to a jury trial. (P. 5.).[3] The court advised petitioner of his constitutional right to trial by jury and thoroughly explained the differences between a jury trial and a non-jury trial. (P. 5-9.) Petitioner's attorney advised the trial court that he had discussed a jury trial waiver during the week leading up to trial, and that he was confident petitioner was waiving his rights knowingly, freely, and intelligently. (P. 9-10.) After being advised of his constitutional rights, petitioner stated that he wished to proceed with a non-jury trial.

The following day, December 5, 2007, before the trial began, the trial court gave petitioner an opportunity to withdraw his jury trial waiver, and petitioner again stated that he wished to waive his right to a jury trial. (T. 4.) In addition to his statements on the record, petitioner signed a written waiver of his right to trial by jury. (Dkt. No. 9, Exhibit B, at 39.)

IV. ***Ineffective Assistance of Trial Counsel Claim***

Petitioner claims that his trial counsel was ineffective for: (1) failing to move for suppression of evidence prior to trial; (2) failing to object to the prosecutor's alleged

---

[3] Numbers in parentheses preceded by "P" refer to the minutes of the pre-trial proceedings on December 4, 2008; and numbers in parentheses preceded by "T" refer to the minutes of the bench trial.

bolstering of the victim's testimony; (3) failing to give a cogent and relevant summation; and (4) failing to cross-examine and object to testimony by the only medical witness presented at trial. Petitioner claims that the cumulative effect of these errors constituted deficient representation. Because the Appellate Division's decision rejecting petitioner's claims on direct appeal was not contrary to, or an unreasonable application of, Supreme Court precedent, nor an unreasonable determination in light of the facts presented in the state court, petitioner's claim is without merit.

To establish a federal claim of ineffective assistance of trial counsel, a petitioner must demonstrate that his attorney's representation "fell below an objective standard of reasonableness" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Generally, a petitioner seeking habeas corpus relief on this ground must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Moreover, in the context of federal habeas review, "AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). In *Harrington*, the Supreme Court analyzed how AEDPA's deference requirement applies to claims involving ineffective assistance of counsel, and held that the "pivotal question" is not whether defense counsel's performance fell below the *Strickland* standard, but whether the state court's application of the *Strickland* standard was unreasonable. 562 U.S. at 101. "The

standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* at 105 (internal quotation marks and citations omitted). Petitioner has not met this standard.

Although counsel filed an extensive pre-trial motion and conducted a pre-trial *Wade* hearing, petitioner faults counsel for failing to seek suppression of the DNA report entered into evidence and a pornographic magazine found on petitioner at the time of his arrest. To prove ineffective assistance of counsel based on an attorney's failure to seek suppression of evidence, a petitioner must demonstrate "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Here, petitioner has not explained the basis on which his attorney could have obtained suppression of either the DNA evidence or the pornographic magazine. He has not argued that the evidence was seized as the fruit of a poisonous arrest, nor has he stated any other legal theory that would support suppression. Furthermore, petitioner has not shown that he was prejudiced by the introduction of the DNA report or the magazine. The findings of the DNA report are entirely consistent with petitioner's theory of defense — that the victim was a prostitute and that he engaged in consensual sex with her. In fact, counsel stipulated to the admission of the report and highlighted that petitioner's DNA was not the only DNA found on the victim's clothing that evening, which supported the defense theory that the victim was engaged in prostitution and consented to having sex with petitioner. (T. 120).

Likewise, petitioner cannot demonstrate that he was prejudiced by counsel's failure to move for suppression of the pornographic magazine. The magazine was never entered into evidence at trial. Thus, a motion to suppress was not necessary. To the extent that petitioner claims counsel should have moved to suppress any mention of the magazine, petitioner cannot demonstrate that the verdict would have been different had the testimony concerning the pornographic magazine been excluded at trial. There were only two references to the magazine that were presented to the court during the prosecution's case. When questioned about his search of petitioner, the arresting officer stated, without elaboration, "I located a porno magazine in his pocket." (T. 52). Additionally, the magazine was visible in a picture that depicted petitioner's pants at the time of his arrest. (T. 49, 51). In light of the fact that petitioner waived his right to a jury, it may be presumed that the trial judge considered only competent evidence in reaching his verdict, and that the judge was capable of assessing the facts of the case without placing undue prejudice on the few minor references to the magazine found on petitioner at the time of his arrest. Moreover, petitioner himself referred to the pornographic magazine during his own testimony. (T. 88). Thus, there is no evidence that the mention of the magazine deprived petitioner of a fair trial.

Petitioner also faults his attorney for failing to object to the prosecutor's supposed bolstering of the victim's testimony on re-direct examination and during summation. This argument is without merit. Despite petitioner's claim to the contrary, the testimony in question did not constitute bolstering, but was a proper rehabilitation of the victim's testimony through the use of her prior consistent statements. During cross-examination, petitioner's counsel questioned the victim about her reluctance to testify

against petitioner at trial, specifically asking her if the only reason she was testifying was to avoid jail. Defense counsel then asked, "[a]nd isn't it true that the reason you didn't want to come down here [to testify] is that you didn't want to continue the lie you started on May 19th?" (T. 35). After counsel questioned the victim's motivation in testifying, it was entirely proper for the prosecutor to elicit her prior consistent statements to show that she was not testifying due to some motive, interest, or bias. This line of questioning was appropriate under both state and federal rules of evidence, and it is unlikely that an objection by defense counsel would have been sustained by the trial court. *See* Fed. R. Evid. 801(d)(1)(B); *Tome v. United States*, 513 U.S. 150, 157 (1995); *People v. Buie*, 86 N.Y.2d 501, 510 (1995).

Petitioner next faults his trial counsel for his summation, which petitioner characterizes as meager and cursory. The Supreme Court has held that "[j]udicial review of a defense attorney's summation is . . . highly deferential — and doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Id.* at 8.

In this case, counsel's closing statement was appropriate given the brevity of the two-day bench trial. On the first day of the trial, the prosecution presented its entire direct case and petitioner testified on his own behalf. On the following day, the prosecution presented one rebuttal witness and the case proceeded directly to closing arguments. It was reasonable for defense counsel not to use his closing statement to rehash testimony that had just been presented to the trial judge. There was no doubt as

to the nature of petitioner's defense — that the sex was consensual and not forced — and it was not necessary for counsel to lay out that argument in great detail for the court. Petitioner's defense was clear, and counsel's summation was reasonable in light of the evidence presented at the non-jury trial.

Lastly, petitioner criticizes his counsel's failure to cross-examine Carrie Kline, the nurse practitioner who performed a sexual assault examination on the victim after the rape. "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (alteration in original) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). In this case, it was a sound strategy not to cross-examine Ms. Kline because her testimony that she found traces of semen on the victim's body and that there were no signs of physical trauma to the victim was consistent with petitioner's theory of defense that he had consensual sex with the victim. There was nothing prejudicial about Ms. Kline's testimony that petitioner's semen was found on the victim's body during the examination. To the extent that Ms. Kline testified about the statements the victim made to her during the examination — that she had been raped earlier in the night — those statements were admissible as statements made for the purpose of medical treatment or diagnosis. In any event, even if Ms. Kline's brief testimony about the victim's statements should have been excluded, counsel's failure to object did not rise to the level of ineffective assistance because there is no indication that the testimony affected the outcome of the trial.

In sum, the state court did not unreasonably deny petitioner's ineffective assistance claim. Petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, and a reasonable probability that, but for counsel's alleged errors, petitioner would have avoided conviction. Viewing the totality of counsel's representation in this non-jury trial, it cannot be said that petitioner did not receive a fair trial.

V. *Ineffective Assistance of Appellate Counsel Claim*

Petitioner faults his appellate counsel for not raising weight-of-the-evidence and legal-sufficiency claims on appeal, and for failing to raise his invalid jury-waiver claim in a motion to vacate judgment rather than on appeal. Petitioner's claims are without merit.

A claim of ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Thus, petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694.

The Supreme Court has held that an appellate attorney is not obligated to raise every "colorable" claim on appeal; he may use his reasonable discretion to determine which claims represent the petitioner's best opportunities for obtaining a reversal of a conviction. *See Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). There is a strong presumption that an appellate counsel's decision not to raise a claim "falls within the wide range of reasonable professional assistance." *Holmes v. Bartlett*, 810 F. Supp.

550, 561 (S.D.N.Y. 1993) (quoting *Strickland*, 466 U.S. at 689). Counsel will be found ineffective for omitting a claim when the petitioner establishes that he "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. Moreover, even if a brief is not "as fully or as well presented as it might have been," this failure alone does not render the representation defective. *Gulliver v. Dalsheim*, 739 F.2d 104, 108 (2d Cir. 1984).

Petitioner has not shown that counsel's failure to argue legal-sufficiency and weight-of-the-evidence claims constitutes ineffective assistance. Petitioner has not demonstrated that such claims were likely to succeed on appeal or that the claims are significantly stronger than his ineffective-assistance-of-trial-counsel and jury-waiver claims. The evidence at trial was legally sufficient to prove petitioner guilty of first-degree rape, and it cannot be said that the trial court's verdict is against the weight of that evidence. Because petitioner admitted that he had sex with the victim, the only issue was whether the sex was forced or consensual. The trial judge observed testimony not only from the victim, but from an eyewitness who saw petitioner on top of the victim with his hand over her mouth. The witness observed petitioner covering the victim's mouth as she attempted to scream for help. Furthermore, the victim testified that she experienced soreness to the parts of her body that were pushed to the ground during the rape. There ultimately existed ample evidence to corroborate the victim's testimony that she was not a willing participant in the sexual encounter and to support the court's guilty verdict. The trial court, as the finder of fact, was entitled to discredit petitioner's testimony to the contrary. Thus, petitioner cannot demonstrate that his

appellate attorney was ineffective for not raising legal-sufficiency and weight-of-the evidence claims on direct appeal.

Petitioner also claims his attorney was ineffective for raising his jury-waiver claim on direct appeal rather than in a C.P.L. §440.10 motion. However, as discussed above, petitioner's jury-waiver claim was found by the appellate court to be without merit. Thus, appellate counsel could not have been ineffective for failing to bring such a claim in a C.P.L. §440.10 motion.

**CONCLUSION**

For all of the foregoing reasons, it is recommended that the petition (Dkt. No. 1) be dismissed in its entirety and that no certificate of appealability issue. *See* 28 U.S.C. §2253(c).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Hon. William M. Skretny, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Skretny.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection*.**

**SO ORDERED.**

Dated: August 23, 2016
Buffalo, New York

/s/ Michael J. Roemer
MICHAEL J. ROEMER
United States Magistrate Judge